### C. M. BYERS v̇. SARA SHERMAN BYERS.

(Filed 25 November, 1942.)

**1. Divorce §§ 1, 2—**

Under N. C. Constitution, Art. II, sec. 10, divorce is purely statutory, and is under no obligation to the ecclesiastical or common law.

**2. Divorce § 2a—**

A divorce *a vinculo* can be had under Public Laws 1937, ch. 100, upon the ground that the parties "have lived separate and apart for two years," without requiring that the separation shall be by deed of separation or other mutual agreement. *Oliver v. Oliver,* 219 N. C., 299, clarified and recent divorce statutes discussed.

**3. Divorce § 9—**

In an action for divorce under Public Laws 1937, ch. 100, a charge by the court to the jury that the living separate and apart, required by that statute, means living separate and apart under mutual agreement only, was erroneous entitling plaintiff to a new trial.

**4. Divorce § 2a—**

The bare fact of living separate and apart for a period of two years, standing alone, will not constitute a cause of action for divorce. There must be an intention on the part of one of the parties to cease cohabitation, shown to have existed from the beginning of the separation period.

**5. Same—**

The law does not contemplate a repudiation by the husband of all marital obligations to come within the statute, and the fact that the husband has, during the separation, provided reasonable support for his wife will not defeat his divorce.

APPEAL by plaintiff from *Hamilton, Special Judge,* at 25 May, 1942, Extra Term, of MECKLENBURG. Error. New trial.

This is an action for divorce under chapter 100, Public Laws of 1937, based on the statutory grounds that plaintiff and defendant had lived separate and apart for two years. The *feme* defendant replied to the complaint, alleging that there was no separation in the sense contemplated in the statute, but that plaintiff abandoned her; and she set up a cross action, alleging cruelty and abandonment, C. S., 1666, and C. S., 1667, and failure to support defendant and the children of the marriage.

On the trial the plaintiff introduced evidence of the marriage and one year's residence in the State. The evidence as to the separation tended to show that more than two years prior to the commencement of the suit, that is, on 5 March, 1940, plaintiff notified defendant that he would live with her no longer, because of conduct on her part which he could not tolerate (much of which was detailed in the evidence), and that they had lived separate and apart ever since, in entirely different establishments in the same town, where plaintiff had his business.

Plaintiff admitted the removal from the house of certain articles of furniture and other articles belonging to plaintiff which were not needed by defendant, but testified that the home was left in a condition to afford ample comfort and protection to defendant and the children.

There was evidence tending to show that plaintiff had endeavored to secure an agreement as to the sum he should pay the defendant in order to provide support for her and the children, but had been unable to secure such agreement; but that defendant had, and used, an unlimited credit of plaintiff at the grocery store, the meat market, the oil fuel dealer, the dairy products dealer, the druggist, the doctors, dentists, the laundry, the dry cleaner, the jeweler, the florist, and all other dealers in the necessities and comforts of life in the city of Charlotte, and that he

provided both in this respect, and in all others, for such support. Plaintiff described the house on Sherwood Avenue, in which defendant lived, detailing its appointments and furnishings, and testified that he had spent during a period of nineteen months, from 1 October, 1940, through April, 1942, an average of $469.34 a month for the maintenance of the home and support of defendant and her two small children, introducing tabulated statements in corroboration, calculated from receipted bills and paid checks.

The evidence tends to show that during the separation period, at plaintiff's suggestion, the defendant went to Mercy Hospital and to Appalachian Hall, a private hospital, for treatment as an alcoholic and drug addict, remaining from 23 March to 19 September, 1940, during which time, and in her absence, plaintiff occupied the Sherwood Avenue home in order to take care of the children, but did not occupy the home during defendant's presence. Plaintiff paid the hospital bill of one thousand three hundred fifty-eight dollars and some cents.

Plaintiff was corroborated as to his intent not to live with defendant any more by his own declaration made to J. L. Wright about noon on 5 March, 1940.

The defendant introduced no evidence.

The case was submitted to the jury upon three issues, the first relating to the marriage, the third relating to the residence of plaintiff, and the second couched in language as follows: "2. Did the plaintiff and the defendant live separate and apart continuously for the past two years just prior to the institution of this action on 7 March, 1942, as alleged in the complaint?"

Upon this issue, the judge instructed the jury as follows: "The Court instructs you that under this evidence, and all of this evidence, as a matter of law, it would be your duty to answer that second issue No"; and again:

"And, adverting again to the second issue, the issue that has been read to you, dealing with the question of plaintiff and defendant living separate and apart, the Court instructs you that under all this evidence, as a matter of law, in the light of the act or statute under which this action is brought, your answer to that second issue would be No."

After the jury had deliberated for approximately fifteen minutes, they were recalled and this further instruction was given them:

"The Court calls your attention to the fact that there are two statutes in North Carolina with respect to divorce on the grounds of parties plaintiff and defendant living apart, that this action is brought under what is known as 1659 (a) of the North Carolina Code, or that which is also known as Chapter 100 of the Public Laws of 1937, and under that section under which this action is brought, living separate and apart

has been construed by our Court as meaning that the parties have been living separate and apart under mutual agreement, that is, that they agreed to live separate and apart. The Court instructs you, in the light of that, that there is no evidence in this case that the parties themselves, Mr. and Mrs. Byers, mutually agreed, agreed among themselves and between themselves, that they would live separate and apart, and that is why the Court instructed you and reiterates its instruction, as a matter of law, under all this evidence, if you believe this evidence and find the facts to be as all this evidence tends to show, you would have to answer that second issue No"; and again:

"Before that second issue could be answered YES, under the law, it would have to be found by the jury, from the evidence and by its greater weight, that the living separate and apart had been with mutual agreement, or agreement between the parties themselves, because, as already observed, this action is brought under that section of the statute which requires the living separate and apart by agreement between the parties."

To all of these instructions, *seriatim,* the plaintiff excepted.

When requested to read the Act under which the case was brought, the court replied: "No, sir, the Court has given this jury the instructions the Court thinks proper, and reiterates that under all this evidence, if you find the facts to be as all this evidence tends to show, as a matter of law you will have to answer that second issue NO." And to this, also, plaintiff excepted.

The jury answered the issue No, and from the adverse judgment ensuing, the plaintiff appealed, assigning error.

*Thaddeus A. Adams for plaintiff, appellant.*

*G. T. Carswell and Joe W. Ervin for defendant, appellee.*

SEAWELL, J. In defining the cause for divorce created by it, chapter 100, Public Laws of 1937, under which this action is brought, reads as follows:

"Section 1. Marriages may be dissolved and the parties thereto divorced from the bonds of matrimony on the application of either party, if and when the husband and wife have lived separate and apart for two years, and the plaintiff in the suit for divorce has resided in the State for a period of one year."

The question posed for our consideration is whether a divorce *a vinculo* can be had under this law upon the ground that the parties "have lived separate and apart for two years," without requiring that the separation shall be by deed of separation or other mutual agreement. There should be no difficulty in giving this question an immediate affirmative

answer, except for the contention of the defendant that the court in defining the legal significance of separation in *Oliver v. Oliver,* 219 N. C., 299, 13 S. E. (2d), 549—rendered since the statute went into force—still regards it necessary that the separation shall be by mutual consent.    *Oliver v. Oliver, supra,* page 304.

We do not regard the opinion in *Oliver v. Oliver, supra,* as having that legal effect, but the situation does call for some clarifying statement of the law.

The history of divorce on the ground of separation discloses a number of statutes on the subject, interlaced with judicial interpretation and respectful legislative response.    Omitting mention of previous legislation, section 1659 of the Consolidated Statutes (1919) provided for a divorce *a vinculo* if there had been a separation of husband and wife, and they had lived separate and apart for ten years, and the plaintiff in the suit had resided in the State for that period.

Chapter 63, Public Laws of 1921, by amendment, reduced the requisite period of separation to five years; and the law as it then stood was construed in *Lee v. Lee,* 182 N. C., 61, 108 S. E., 352, as not extending "to granting the decree upon the suit of the party in default." *Sitterson v. Sitterson,* 191 N. C., 319, 131 S. E., 641. The law was then amended by chapter 6, Public Laws of 1929, in a respect not material to this discussion.

Chapter 72, Public Laws of 1931, with the limitation that "this Act shall be in addition to other acts and not construed as repealing other laws on the subject of divorces" (sec. 2), provides as follows: "Section 1. Marriages may be dissolved and the parties thereto divorced from the bonds of matrimony, on application of either party, if and when there has been a separation of husband and wife, either under deed of separation or otherwise, and they have lived separate and apart for five years, and no children have been born to the marriage, and the plaintiff in the suit for divorce has resided in the State for that period."

Chapter 163, Public Laws of 1933, amending this Act (with some inexactness of reference not material to the point at issue), substituted the following:

"Section 1.    Marriages may be dissolved and the parties thereto divorced from the bonds of matrimony, on application of either party, if and when there has been a separation of husband and wife, either under deed of separation or otherwise, and they have lived separate and apart for two years, and the plaintiff in the suit for divorce has resided in the State for a period of one year."

Recognizing that the 1933 Act was intended to operate independently and was not affected by other fringing laws on the subject, the Court,

in *Long v. Long,* 206 N. C., 706, 175 S. E., 85, held that the require-
ment of C. S., 1659, that the suit must be at the instance "of the injured
party" did not apply.   *Campbell v. Campbell,* 207 N. C., 859, 176
S. E., 250.

The statute was further construed in *Parker v. Parker,* 210 N. C., 264,
186 S. E., 346, where the decision was addressed more particularly to
the wording of the statute—*"when there has been a separation of hus-
band and wife, either under deed of separation or otherwise"*—and the
Court held that a mutual agreement to separate was essential to divorce ·
under the terms of the Act.   *Hyder v. Hyder,* 210 N. C., 486, 187 S. E.,
798; *Woodruff v. Woodruff,* 215 N. C., 685, 3 S. E. (2d), 5.

In the *Parker case, supra,* we find the definition of "separation,"
quoted in *Oliver v. Oliver, supra,* which constitutes defendant's sole
reliance on this appeal: "The word separation as applied to the legal
status of a husband and wife means more than abandonment; it means
a cessation of cohabitation of husband and wife, by mutual agreement."

*Parker v. Parker, supra,* refers this definition to the case of *Lee v.
Lee, supra,* and this, in turn, to Black's Law Dictionary, which again
refers it generally to "Matrimonial Law"; and so, to the ecclesiastical
and common law of England, where such a separation was accorded a
legal status not thought to be inconsistent with the matrimonial policy.
Perhaps, however, it was the assumption by the Court that the Legisla-
ture used the word in this technical sense, rather than its popular mean-
ing, that induced the Court to construe the term "or otherwise" as mean-
ing some other form of mutual consent.

Upon this, the Legislature made its latest statutory expression on the
subject in chapter 100, Public Laws of 1937, quoted *supra,* which is
amendatory of the 1931 law and the 1933 law, and preserves its status
as creating an independent cause of divorce.   Sec. 2.   In this Act, the
word "separation" nowhere occurs.   In view of the history of the subject
which we have just related, it was apparently the intention of the
Legislature to drop it from the law, with all the doctrinal implications
which attended it, and to substitute for it words descriptive of a factual
situation less amenable to interpretive changes.   At the same time, it
struck out the requirement that the separation should be by deed of
separation or otherwise, and we have neither occasion nor power to read
it into the law.   To do so would be to find that the General Assembly
had wasted effort on useless legislation.

It may be well to observe that under Article II, sec. 10, of our Consti-
tution, divorce is purely statutory, and is under no obligation to the
ecclesiastical or common law.   *Long v. Long, supra:* "The statute gives,
and the statute takes away."

It is still true that the bare fact of living separate and apart for the period of two years, standing alone, will not constitute a cause of action for divorce. There must be at least an intention on the part of one of the parties to cease cohabitation, and this must be shown to have existed at the time alleged as the beginning of the separation period; it must appear that the separation is with that definite purpose on the part of at least one of the parties. The exigencies of life and the necessity of making a livelihood may sometimes require that the husband shall absent himself from the wife for long periods—a situation which was not contemplated by. the law as a cause of divorce in fixing the period of separation. *Woodruff v. Woodruff, supra.*

Competent evidence of the dealings of the parties with each other during this period may be considered by the jury upon this question; but the fact that the husband has meantime attempted to fulfill his obligations to the law in providing reasonable support of the wife— obligations he cannot avoid without consent of the wife—where his acts are attributable to that necessity, will not defeat his divorce.

While it has been uniformly held by this Court that a husband may not obtain a divorce based, in whole or in part, upon his own wrong— *Reynolds v. Reynolds,* 208 N. C., 428, 430, 181 S. E., 338; *Brown v. Brown,* 213 N. C., 347, 349, 196 S. E., 333—still, as pithily expressed by *Mr. Justice Schenck* in *Hyder v. Hyder,* 215 N. C., 239, 240, "a husband is not compelled to live with his wife if he provides her adequate support." It must, therefore, be conceded that the law under review does not contemplate, as essential to an effectual separation under the statute, a repudiation of all marital obligations, which, of itself, would destroy his remedy.

The defendant has made a motion to amend her pleading here so as to set up as *res judicata* a former judgment between herself and her husband. While under C. S., 1414, this Court has certain power to allow amendments to pleadings, the record does not justify its exercise upon this appeal. The motion may be renewed in the Superior Court.

In the instructions noted there is error, entitling plaintiff to a new trial. It is so ordered.

Error. New trial.