WEN CHOUH LIN, Plaintiff v. ANITA C.S. LIN, Defendant

No. 9114DC1082

(Filed 2 February 1993)

**Divorce and Separation § 204 (NCI4th) — alimony — living separate and apart — abandonment — condonation**

　　　The trial court did not err in a divorce action by finding that plaintiff-husband's actions constituted abandonment and that defendant is entitled to alimony where the parties lived with their children in an apartment from 1968 to 1978; the parties rented an additional apartment in 1978 and lived as one family in both apartments; they gave up one apartment in 1979 and rented the other adjacent apartment; defendant moved into one and plaintiff remained at the original apartment; the parties ceased having sexual relations; both parties and their children had full and free access to both apartments; defendant did the grocery shopping and cooked the family meals; family meals were usually eaten in the apartment occupied by plaintiff; defendant frequently used the kitchen in that apartment to cook and did the laundry for the parties and their children using the washing machine in that apartment; plaintiff and defendant jointly entertained overnight house guests once or twice, on several occasions had their meals together with mutual friends, traveled together to purchase items for the business which they jointly ran and slept in the same room on those trips; both apartments shared a common telephone number and used the same mailbox for much of the time from 1979 to 1990; the parties shared a joint checking account at least until 1983 and had joint credit cards until 1987; plaintiff paid defendant's automobile and health insurance, rent, telephone, utilities, and other expenses, but did not pay any money directly to defendant after July of 1989; and in 1990, just as defendant was entering the hospital to undergo major surgery, plaintiff moved into another section of the apartment complex and stopped paying defendant's rent and other expenses. Although plaintiff contends that the separation occurred in 1979 and that the interaction between the parties was necessitated purely by economics, the trial court's finding that the separation of the parties occurred in 1990 is fully supported by the evidence presented.

**Am Jur 2d, Divorce and Separation §§ 567, 647.**

**Fault as consideration in alimony, spousal support, or property division awards pursuant to no-fault divorce. 86 ALR3d 1116.**

Appeal by plaintiff from judgment signed and entered 11 October 1991 in Durham County District Court by Judge Richard G. Chaney. Heard in the Court of Appeals 18 November 1992.

*Maxwell & Hutson, P.A., by Robert A. Beason and John A. Bowman, for plaintiff-appellant.*

*Upchurch & Galifianakis, by Roger S. Upchurch, for defendant-appellee.*

LEWIS, Judge.

By this appeal, the plaintiff-husband challenges the trial court's judgment which held that his actions in September 1990 constituted abandonment and that as a consequence defendant is entitled to alimony. Although plaintiff filed a complaint for absolute divorce on 13 November 1990, there is no evidence in the record indicating that any divorce has been granted between the parties.

The facts of this case are unusual. Plaintiff-husband and defendant-wife were married in 1964 and had three children, all of whom have reached the age of majority. The parties lived in an apartment at 920 Lambeth Circle in Durham from 1968 until 1978.

In 1978 plaintiff rented an additional apartment, 922 Lambeth Circle. The parties lived together with their children as one family in both apartments. Thereafter, in 1979, the parties gave up 922 Lambeth Circle and began renting 918 Lambeth Circle. These were adjacent apartments which shared a common porch. The defendant moved into 918 Lambeth Circle, and plaintiff remained at 920 Lambeth Circle. In September 1990 the plaintiff moved to a different apartment in the same apartment complex.

The parties ceased having sexual relations in May of 1979. The parties and their children had full and free access to both of the apartments, with plaintiff "usually" sleeping in 920 Lambeth and defendant "usually" sleeping in 918 Lambeth. The testimony showed that the sleeping arrangements of the three children were

more fluid, with the children moving from one apartment to the other and back.

The record and the court's order reflect that during the period from 1979 to 1990, the defendant did the grocery shopping and cooked the family meals, which were usually eaten in apartment 920. Defendant frequently used the kitchen in apartment 920 to cook, and did the laundry for the parties and their children using the washing machine in apartment 920.

Plaintiff and defendant jointly entertained overnight house guests once or twice in the early 1980s. There was also testimony that on several occasions the parties had meals together with mutual friends. The defendant testified as well that the parties sometimes traveled together, to Washington, D.C. and to New York City, and slept in the same room. The purpose of these trips was to purchase items for the business which they jointly ran.

Both apartments 918 and 920 shared a common telephone number and used the same mailbox for much of the period between 1979 and 1990. The parties shared a joint checking account at least until 1983, and had joint credit cards until 1987. Plaintiff paid defendant's automobile and health insurance until the time of trial. In addition, plaintiff also paid defendant's rent, telephone, utilities, and other expenses, but after July 1989 plaintiff did not pay any money directly to defendant.

Defendant testified, and the court found, that there was never any consent or acquiescence on the part of the defendant to the plaintiff's leaving. The defendant was under the impression that the move into two apartments was to accommodate the size of the family, given that the children, two girls and one boy, were getting older. In late September or early October of 1990, just as defendant was entering the hospital to undergo major surgery, the plaintiff moved away from apartments 918 and 920 and into another section of the apartment complex. At this time, plaintiff stopped paying defendant's rent and other expenses. The trial court concluded that, based upon the evidence, the parties lived together as husband and wife "in the usually accepted sense" until September 1990, at which time plaintiff abandoned defendant.

Plaintiff assigns error to the trial court's holding that the separation of the parties occurred in 1990. Plaintiff argues that the parties, by living in different apartments, lived "separate and

apart" as contemplated in N.C.G.S. § 50-6 (1987). Plaintiff contends that the parties separated in 1979 when he moved into apartment 920 and terminated the sexual relationship between the parties. He claims that his move was an effort at living apart from his wife, and it was economically necessary to move to an adjacent, as opposed to a completely separate apartment, as the latter would be "more expensive for him to provide for his wife and minor children."

Plaintiff also argues that he and defendant did not hold themselves out as husband and wife. He contends that the "incidents of interaction" between the parties were merely isolated events that have no bearing on whether or not the parties actually separated. In fact, plaintiff contends some of these factors, such as the single telephone number and the joint checking and credit card accounts, were necessitated purely by economics. Plaintiff argues that virtually every action he has taken since 1979 was influenced by economics.

Our standard of review is set forth in *In re Estate of Trogdon*, 330 N.C. 143, 409 S.E.2d 897 (1991). When there has been a trial by judge without a jury, the court's findings of fact are conclusive on appeal if there is evidence to support them, even if there is contrary evidence. *Id.* at 147, 409 S.E.2d at 900. If the evidence allows different inferences to be drawn therefrom, the trial judge determines which inferences shall be allowed, and this determination is binding on the appellate courts. *Id.* at 148, 409 S.E.2d at 900.

This case raises the question of what is meant by "living separate and apart." It is well-settled that there is no separation where "the parties have held themselves out as husband and wife living together, nor when the association between them has been of such character as to induce others who observe them to regard them as living together in the ordinary acceptation of that descriptive phrase." *In re Estate of Adamee*, 291 N.C. 386, 392, 230 S.E.2d 541, 546 (1976). Neither we nor counsel found any North Carolina cases on point.

We note that the cessation of sexual relations does not alone constitute separation. In *Dudley v. Dudley*, 225 N.C. 83, 33 S.E.2d 489 (1945), the Supreme Court held that a separation "implies something more than a discontinuance of sexual relations. . . . It implies the living apart for such period in such a manner that

those in the neighborhood may see that the husband and wife are not living together." *Id.* at 86, 33 S.E.2d at 491. A situation very similar to the one at bar is found in *Ponder v. Ponder*, 32 N.C. App. 150, 230 S.E.2d 786 (1977).

In *Ponder* the parties, after allegedly separating, continued to reside in the same dwelling house but occupied separate bedrooms. The wife in *Ponder* prepared meals for the husband, which they consumed in the dwelling house. The wife used the same automobile, registered in the husband's name, that she had used for years, and except for the eight months before trial the husband paid all of the wife's automobile expenses. In addition, other family members visited the parties in the residence occupied by them. Under the facts of *Ponder*, the Court of Appeals affirmed the trial court's decision that the parties had not lived separate and apart for one year as contemplated under N.C.G.S. § 50-6. We hold that in the present case, the findings of fact by the trial court are fully supported by the evidence presented.

The trial court also found that plaintiff abandoned the defendant in September 1990. One spouse abandons another when "he or she brings their cohabitation to an end without justification, without the consent of the other spouse and without the intent of renewing it." *Panhorst v. Panhorst*, 277 N.C. 664, 671, 178 S.E.2d 387, 392 (1971). The evidence shows that the plaintiff simply moved out of his adjacent apartment and stopped supporting his wife at the same time defendant's earnings ceased and she was entering the hospital to undergo surgery. The record shows no evidence by which it could be said that defendant condoned her husband's departure or that plaintiff had any justification for leaving his wife.

Affirmed.

Judges WELLS and EAGLES concur.